UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DUSTIN GRANGER, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:19cv60(MPS) |
| | : | |
| WARDEN SANTIAGO, et al., | : | |
| Defendants. | : | |

**INITIAL REVIEW ORDER**

The plaintiff, Dustin Granger, is incarcerated at the Corrigan-Radgowski Correctional

Institution in Uncasville, Connecticut ("Corrigan").  He has filed a complaint under 42 U.S.C. §

1983 against Warden Santiago, Lieutenants Conger and Tosses, and Correctional Officer Evans.

The plaintiff alleges that Lieutenant Tosses and Correctional Officer Evans subjected him to

excessive force and an unreasonable strip search on August 26, 2016 at Corrigan.  For the

reasons set forth below, the court will dismiss the complaint in part.

I.     **Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints

against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous,

malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary

relief from a defendant who is immune from such relief."  *Id.*  Rule 8 of the Federal Rules of

Civil Procedure requires that a complaint contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has

facial plausibility when a plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

## II.   Facts

Upon the plaintiff's arrival at Corrigan on August 26, 2016, he learned that he would have to undergo a strip search. *See* Compl., at 4 ¶ 1. Correctional Officer Evans ordered the plaintiff to bend at the waist and to spread his buttocks. *See id.* ¶ 2. The plaintiff refused to follow this order because he preferred "the normal [strip search] procedure" which only required him to "squat and cough." *See id.* The plaintiff felt that the procedure requiring him to bend at the waist and to spread his buttocks was "derogatory and excessive and unsettling." *See id.* Correctional Officer Evans threatened to "take [his] bare hands and dig up inside of [the plaintiff] forcefully" if the plaintiff did not comply with his order. *See id.*

The plaintiff then admitted that he had swallowed drugs and asked to be placed in a dry cell "rather than be molested by" Officer Evans. *See id.* ¶¶ 4-5. The plaintiff stated that he was "ready to discharge through bowel movements." *See id.* ¶5.

Correctional Officer Evans called a code due to the plaintiff's refusal to submit to a strip search. *See id.* at 5 ¶ 8. In response to the code, Correctional officers and Lieutenant Tosses

slammed the plaintiff to the floor and chipped the plaintiff's tooth. *See id.* The plaintiff again

admitted that he had swallowed drugs. *See id.* ¶ 7. Lieutenant Tosses and Correctional Officer

Evans and another officer grabbed the plaintiff, kneed the plaintiff in his thighs, and dropped him

to the floor. *See id.* Lieutenant Tosses "placed a glove on his hand and forcefully entered [the

plaintiff's] rectum." *See id.* ¶ 8. The plaintiff could hear another officer in the background state:

"Why didn't we just put the dude in a dry cell." *See id.* The plaintiff begged and pleaded with

Lieutenant Tosses to stop the search. *See id.* ¶ 9. The plaintiff could see the face of Lieutenant

Tosses as he performed the search and noticed that he was smirking. *See id.*

　　As soon as Lieutenant Tosses completed the search, the plaintiff asked to be transferred

or transported to a "medical emergency unit" and to call the Prison Rape Elimination Act

("PREA") unit and the Inmates Legal Aid Program ("ILAP"). *See id.* ¶ 10. All requests were

denied. *See id.* Since undergoing the body cavity search, the plaintiff has been impotent. *See id.*

## III.　Discussion

　　The plaintiff does not identify the basis for his claims against the defendants. At the time

of the incidents on August 26, 2016, the plaintiff was a pretrial detainee.[1] In *DeShaney v.*

*Winnebago Cnty. Dept. of Soc. Servs.,* 489 U.S. 189 (1989), the Supreme Court made clear that

"when the State takes a person into its custody and holds him there against his will, the

---

[1]　The State of Connecticut Department of Correction's website reflects that on August 26, 2016, the plaintiff was admitted to the custody of the Department of Correction. On November 15, 2016, a judge sentenced the plaintiff to five years of imprisonment for a violation of probation. This information may be found at http://portal.ct.gov/DOC using the plaintiff's CT DOC Inmate Number 339010. The State of Connecticut's Judicial Branch website reflects that the plaintiff pleaded guilty to a violation of probation on July 11, 2016, and judge sentenced him to five years of imprisonment on November 15, 2016. This information may be found at: http://www.jud.ct.gov/jud2.htm under Superior Court Case Look-up; Criminal/Motor Vehicle; Convictions - by Docket Number using KNL-CR10-0308962-T (Last visited on April 15, 2019).

Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Id.* at 199–200.

With regard to conditions of confinement, the Eighth Amendment protects the rights of a convicted prisoner while the Fourteenth Amendment protects the rights of a pretrial detainee. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (in contrast to a sentenced prisoner, whose conditions of confinement are analyzed under the Cruel and Unusual Punishment Clause of the Eighth Amendment, "the proper inquiry [for a pretrial detainee] is whether conditions [of confinement] amount to punishment of the detainee" under the Due Process Clause of the Fourteenth Amendment); *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (acknowledging that the claim of deliberate indifference to conditions of confinement, including health and safety, that is asserted by a pretrial detainee in state custody is "evaluated under the Due Process Clause [of the Fourteenth Amendment] because pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise.") (internal brackets, quotation marks and citations omitted). The Fourteenth Amendment also protects a detainee against deliberate indifference to his or her medical needs and the use of excessive force by prison officials. *See Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018) ("pretrial detainees . . . rely on the [Fourteenth Amendment's] constitutional guarantee of "due process" as the source of an excessive force claim); *Darnell*, 849 F.3d at 33 n.9 ("deliberate indifference means the same thing for each type of claim under the Fourteenth Amendment"). *Walker v. Wright*, No. 3:17-CV-425 (JCH), 2018 WL 2225009, at *5 (D. Conn. May 15, 2018) (noting that "District courts in this Circuit have therefore applied . . . [the] objective "*mens rea*" prong [described in *Darnell*] to claims of deliberate indifference to serious medical needs under

the Fourteenth Amendment") (collecting cases).

Accordingly, the court liberally construes the plaintiff's allegations as asserting Fourteenth Amendment excessive force and sexual abuse claims against Lieutenant Tosses and Correctional Officer Evans and a Fourth Amendment unreasonable search claim against Lieutenant Tosses and Correctional Officer Evans. The court will also address the allegations regarding the plaintiff's requests to contact the PREA unit and ILAP and his request to be transferred to a medical unit. Compl. at 5.

### A.    Official Capacity Claims

The plaintiff sues the defendants in their individual and official capacities. For relief, the plaintiff seeks 1.8 million dollars. To the extent that the plaintiff sues the defendants in their official capacities for monetary damages, that claim is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). The claim for 1.8 million dollars from the defendants in their official capacities is dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

### B.    Warden Santiago and Lieutenant Conger

The plaintiff does not mention Warden Santiago or Lieutenant Conger other than in the caption and the description of the parties. Thus, he has not alleged that either defendant violated his federally or constitutionally protected rights. The claims against Lieutenant Conger and Warden Conger are dismissed. *See* 28 U.S.C. § 1915A(b)(2).

### C.    Fourth Amendment – Search

The plaintiff alleges that Lieutenant Tosses and Correctional Officer Evans performed an unreasonable manual body cavity search of his rectum on August 26, 2016. The Fourth Amendment to the United States Constitution states that "[t]he right of the people in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. In the prison context, the Fourth Amendment proscribes unreasonable searches of both pretrial detainees and sentenced inmates. *See Bell*, 441 U.S. at 558.

The Supreme Court has recognized that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence v. Bd. of Chosen Freeholders,* 566 U.S. 318, 328 (2012) (citation omitted). Furthermore, correctional officials possess the professional expertise and experience to undertake "[t]he task of determining whether a policy is reasonably related to legitimate security interests." *Id.* (citation omitted). Thus, "courts should ordinarily defer to" the professional expertise of correctional officials in matters involving legitimate security concerns unless there is "substantial evidence . . . to indicate that the officials have exaggerated their response to these con[cerns]." *Id.* (internal quotation marks and citations omitted).

In *Bell*, the Supreme Court considered the privacy rights of pretrial detainees in connection with a directive that required prison officials to conduct a visual cavity search of an inmate after every contact visit. The Court held that the Fourth Amendment requires that strip searches of inmates be reasonable. 441 U.S. at 559. In determining whether a particular strip search is reasonable, a court is required to balance the need for the particular search against the invasion of the personal privacy rights that the search entails. The Second Circuit has more

6

recently "reiterate[d] that inmates retain a limited right of bodily privacy under the Fourth Amendment." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (citing *Covino v. Patrissi*, 967 F.2d 73, 78 (2d Cir. 1992)).

When evaluating a claim that an isolated search infringed on an inmate's right of bodily privacy, a court must consider four factors in determining whether the search was reasonable: "(1) the scope of the intrusion; (2) the manner in which it is conducted; (3) the justification for initiating it; and (4) the place in which it is conducted." *Harris*, 818 F.3d at 63 (quoting *Bell*, 441 U.S. at 559). A strip search is unconstitutional under the Fourth Amendment "if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish." *Jean–Laurent v. Wilkerson,* 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (citations omitted).

There are at least three types of searches that implicate an inmate's right to bodily privacy:

> A strip search, though an umbrella term, generally refers to an inspection of a naked individual, without any scrutiny of the subject's body cavities. A visual body cavity search extends to visual inspection of the anal and genital areas. A manual body cavity search includes some degree of touching or probing of body cavities.

*Harris*, 818 F.3d at 58 (internal quotation marks, brackets and citations omitted). A manual body cavity search is the "the most invasive" type of strip search. *Fate v. Charles*, 24 F. Supp. 3d 337, 344 (S.D.N.Y. 2014).

The plaintiff claims that Lieutenant Tosses subjected him to a manual body cavity search of his rectum. The plaintiff challenges the scope or intrusiveness of the search, the manner in which the search was conducted, including the force used during the search, and the justification for the type of search conducted. State of Connecticut Administrative Directive 6.7, Titled

Searches Conducted in Correctional Facilities, provides that a manual body cavity search of an inmate "be performed only by a medical professional under the supervision of a licensed physician. . . . [and] only . . . after reasonable, less intrusive measures of recovery of suspected contraband have been considered or employed as appropriate. . . . includ[ing] placement in a dry cell or room under direct observation for a minimum of 72 hours." Admin. Dir. 6.7(8)(a)(ii)(1).[2]

The court concludes that the plaintiff has stated a plausible claim that the manual body cavity search conducted by Lieutenant Tosses, while Officer Evans assisted or was present, was unreasonable under the Fourth Amendment. *See Harris v. Forrester*, No. 3:18-CV-00120, 2018 WL 2669989, at *2–3 (E.D. Tenn. June 4, 2018) (concluding inmate's allegation that correctional officials ignored his request to be placed in a dry cell rather than submit to visual cavity search, forcefully restrained him face down on the bed, ripped off his boxer shorts, and searched his anal cavity stated plausible section 1983 claim against officials). The Fourth Amendment search claim will proceed against Lieutenant Tosses and Officer Evans in their individual capacities.

### D.      Fourteenth Amendment – Excessive Force

The plaintiff alleges that prior to the manual body cavity search, Lieutenant Tosses and other unnamed officers, slammed him to the floor and chipped his tooth. The plaintiff also

---

[2]  Administrative Directive 6.7 (effective June 29, 2018) is available at http://portal.ct.gov/DOC/AD/AD-Chapter-6. The version of Administrative Directive 6.7 that was in effect at the time of the body cavity search conducted on the plaintiff on August 26, 2016, may be found as an exhibit filed in support of the motion for summary judgment in *Shehan v. Erfe, et al.*, Case No. 3:15cv1315(MPS) (Local Rule 16(a)1 Statement, Ex. E, [ECF No. 59-7], Administrative Directive 6.7 (effective August 15, 2014)). In the August 15, 2014 version of Administrative Directive 6.7, the relevant section and subsections addressed to manual body cavity searches are located at 6.7(9) and (B).

alleges that Lieutenant Tosses and Officer Evans grabbed him, kneed him in the thighs, and dropped him to the floor.

In *Kingsley v. Hendrickson,* —— U.S. ——, 135 S. Ct. 2466 (2015), the Supreme Court held that in deciding whether the force used by a prison official against a pretrial detainee was excessive under the Fourteenth Amendment, "courts must use an objective standard" rather than "a subjective standard that takes into account [the prison official's] state of mind." *Id.* at ___, 135 S. Ct. at 2472-73. Accordingly, to state an excessive force claim against a prison official, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at ___, 135 S. Ct. at 2473.

The Supreme Court cautioned district courts not to "mechanically" apply the objective reasonableness standard, because "objective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Thus, the determination of reasonableness must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time. . . ." *Id.* In addition, "[a] court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in the judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (internal quotation marks and alterations omitted). Various considerations "may bear on the reasonableness or unreasonableness of the force used[,]" including the "relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the

officer; and whether the plaintiff was actively resisting," among others. *See id.*

Given the plaintiff's allegations that he had agreed to be escorted to a dry cell to discharge the narcotics that he had ingested prior to the attempt by Officer Evans to conduct a visual body cavity search and absent any other allegations that the plaintiff was being actively disruptive, the court concludes that the plaintiff has stated a plausible claim that the force used by Lieutenant Tosses against him, slamming him to the floor in such a way that he chipped a tooth, and the force used by Lieutenant Tosses and Officer Evans, kneeing him in the thighs and dropping him to the floor, was objectively unreasonable. These claims of excessive force will proceed against Officer Evans and Lieutenant Tosses in their individual capacities.

### E. <u>Fourteenth Amendment – Excessive Force During Search</u>

The plaintiff alleges that he admitted to Lieutenant Tosses that he had swallowed narcotics and that he wanted to relieve himself of the narcotics by being placed in a dry cell. Lieutenant Tosses, with the assistance of Officer Evans, chose instead to immediately perform a manual body cavity search of the plaintiff to attempt to extract the narcotics from the plaintiff's rectum. The plaintiff alleges that at one point when he was pleading and begging for Lieutenant Tosses to stop conducting the search, he was able to observe that Lieutenant Tosses was smirking. The court construes these allegations as a challenge to the search as a use of excessive force against the plaintiff as a means to humiliate him rather than to maintain order or security.

In *Boddie v. Schnieder*, 105 F.3d 857 (2d Cir. 1997), the Second Circuit acknowledged that physical "sexual abuse" of a prisoner by a correctional officer "may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind" in violation of a prisoner's

Eighth Amendment right to be free from cruel and unusual punishment. *Id.* at 861. The court held, however, that "[n]o single incident" of sexual abuse of the plaintiff was "objectively, sufficiently serious" and the series of incidents of abuse were not "cumulatively egregious" enough to meet the objective prong of the Eighth Amendment standard. *Id.*

In *Crawford v. Cuomo*, 796 F.3d 252 (2d Cir. 2015), the Second Circuit clarified the Eighth Amendment standard that must be applied to a claim of sexual abuse of an inmate by a prison official and held that in view of the changing standards of human decency, an inmate may state a claim for deliberate indifference if "[a] corrections officer's intentional contact with an inmate's genitalia or other intimate area . . . serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate[.]" *Id.* at 257. Thus, one isolated incident of sexual abuse that was "sufficiently severe or serious" could constitute conduct that was sufficiently harmful enough to offend contemporary standards of decency and to meet the objective prong of the Eighth Amendment standard. *Id.* The "principal inquiry" a court must make "is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is taken to arouse or gratify the officer or humiliate the inmate." *Id.* at 257–58. It is clear that "prison officials looking for contraband may subject inmates to reasonable strip searches and cavity searches," but that such a search "may not be undertaken maliciously or for the purposes of sexually abusing the inmate." *Id.* at 258.

In *Boddie*, the Second Circuit noted that "[t]he subjective element of the Eighth Amendment test may also be met by claims of sexual abuse." 105 F.3d at 861. To meet the subjective prong, an inmate must allege that the prison officials involved "acted with a

subjectively 'sufficiently culpable state of mind.'" *Crawford*, 796 F.3d at 257 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). In the absence of an inference from the prison official's alleged conduct of a "legitimate law enforcement or penological purpose," sexual "abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." *Id.* at 257 n.4 (quoting *Boddie*. at 861 ("It is therefore apparent, even without considering exactly what *mens rea* is necessary to show a "wanton" state of mind for a claim of sexual abuse, that a prison official who sexually abuses a prisoner can be found to have a sufficiently culpable state of mind to violate the prisoner's constitutional rights.")). In *Crawford*, however, the parties did not dispute that the plaintiff had met the subjective prong of the Eighth Amendment standard. *See id.*

Although, as indicated above, the Supreme Court has ruled in *Kingsley* that only an objective standard is appropriate when analyzing claims of excessive force brought by pre-trial detainees, it is unclear to what extent this ruling is applicable to a pretrial detainee's claims of sexual abuse under the Fourteenth Amendment. *See Patterson v. Ponte*, No. 16 Civ. 3156 (PAE)(JCF), 2017 WL 1194489, at *8 (S.D.N.Y. Mar. 30, 2017) (setting forth standard to be applied to sexual assault/abuse claim by pretrial detainee to include both objective seriousness prong of *Crawford* and "mental element prong" of Kingsley which required, "a pretrial detainee [to] show only that the force purposely or knowingly used against him was objectively unreasonable"), *report and recommendation adopted*, No. 16 Civ. 3156 (PAE)(JCF), 2017 WL 1405753 (S.D.N.Y. Apr. 17, 2017); *Holland v. City of New York*, 197 F. Supp. 3d 529, 546 (S.D.N.Y. 2016) (noting that post-*Kingsley* it is unclear whether "sexual abuse claims of a pretrial detainee must still meet both the objective and subjective prongs of the traditional Eighth

Amendment analysis" but declining to further address the issue since plaintiff's "allegations fail to meet both" prongs). The court concludes that under either the Eighth Amendment standard set forth in *Crawford* that involves both objective and subjective prongs or under the Fourteenth Amendment post-*Kinglsey* excessive force standard that involves only an objective prong, the plaintiff's allegations state a plausible claim of sexual abuse.

The plaintiff has alleged facts to suggest that Lieutenant Tosses conducted the manual body cavity search for the purpose of humiliating him rather than for a legitimate penological purpose and that he suffered physical and possibly psychological harm as a result of the search. The court concludes that the plaintiff has articulated a sufficiently serious deprivation to satisfy the objective prong of an Eighth Amendment claim under *Crawford*. Furthermore, if "no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." *Crawford*, 796 F.3d at 257 n.4 (quoting *Boddie*. at 861). The court concludes that the plaintiff has plausibly alleged that a legitimate penological purpose may not be inferred from the manual body cavity search given the circumstances under which it was performed. Thus, the search itself may constitute evidence of a culpable state of mind and meet the subjective prong of the Eighth Amendment standard. Thus, the facts as alleged plausibly meet the subjective requirement of a sexual abuse claim under the Eighth Amendment standard.

Applying the objective Fourteenth Amendment excessive force standard, as described by the United States Supreme Court in *Kingsley*, to the claim of sexual abuse asserted by the plaintiff, a pretrial detainee, the court concludes that the plaintiff has alleged sufficient facts to state a claim that the force used by Lieutenant Tosses in conducting the body cavity search was

unreasonable.  *See Kingsley*, ___ U.S. at ___, 135 S. Ct. at 2473 (an excessive force claim

asserted by "a pretrial detainee" only requires a "show[ing] . . . that the force purposely or

knowingly used against [the detainee] was objectively unreasonable.").   Although the plaintiff's

concession that he had ingested contraband was a serious security concern, there was at least one

alternative to a manual body cavity search that was delineated under Department of Correction

Administrative Directive 6.7 – placement of the plaintiff in a dry cell. Further, the plaintiff had

willingly consented to that alternative, another officer or official had suggested the alternative

during the search, and Lieutenant Tosses made no attempt to temper his use of force given the

information available to him. Accordingly, the Fourteenth Amendment sexual assault claim

against Lieutenant Tosses and Correctional Officer Evans will proceed.

F.     **PREA**

The plaintiff alleges that he asked to call the PREA unit, but his request was denied.  He

does not indicate to whom he directed the request or who denied the request.

The PREA is intended to compile data and statistics concerning incidences of prison rape

and to develop and implement national standards for the detection, prevention, reduction, and

punishment of prison rape. See PREA, 42 U.S.C. §§ 30302-03, 30306-07 (formerly cited as §§

15602-03, 15606-07)).  The Act includes no language that grants specific rights to inmates.  *See*

*Gonzaga University v. Doe*, 563 U.S. 273, 279-80 (2002) (in the absence of "an 'unambiguous'

intent to confer individual rights," such as a right to sue, courts will not imply such a right in a

federal funding provision).  Consequently, district courts have routinely held that there is no

private right of action for inmates to sue prison officials for non-compliance with the PREA.

*See Brown v. Rose*, No. 3:16-CV-00229 (JCH), 2018 WL 3637474, at *7 (D. Conn. July 31,

2018) ("Because the PREA does not create a private right of action for prisoners, Brown cannot show that he was actually injured if Captain Cichetti prevented him from pursuing a PREA claim.") (collecting cases); *Patterson v. Patterson*, No. 1:16-CV-00844 EAW, 2017 WL 1383899, at *4 (W.D.N.Y. Apr. 14, 2017) ("[N]othing in the statute suggests that PREA intended to establish a private cause of action for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a cause of action by an inmate.") (internal quotation marks and citations omitted); *Chao v. Ballista*, 772 F. Supp. 2d 337, 341 n.2 (D. Mass. 2011) (collecting cases and noting that "every court to address the issue" has held that the PREA does not allow a private cause of action); *Chinnici v. Edwards,* No. 1:07-cv-229, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008) ("[T]he PREA confers no private right of action. The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue.") (citation omitted).

The allegation that one of the defendants may have denied the plaintiff's request to contact the PREA immediately after the completion of the search on August 26, 2016 does not state a claim of a violation of the plaintiff's constitutionally or federally protected rights. Accordingly, any claim asserted under the PREA is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### G.     <u>Request to Contact ILAP</u>

The plaintiff alleges that after the search, he also requested to contact ILAP. The plaintiff does not indicate to whom he directed his request or who denied the request. Even if one of the defendants refused the plaintiff's request to contact ILAP, the allegation would not state a claim of a violation of his federally or constitutionally protected rights.

"[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment

right to petition the government." *Sure–Tan, Inc. v. NLRB,* 467 U.S. 883, 896–897 (1984) (citation omitted). It is well settled that sentenced inmates and detainees have a First Amendment "right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 828 (1977) ("We hold, therefore, that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.") *(modified on other grounds by Lewis v. Casey*, 518 U.S. 343, 350 (1996)); *Bourdon v. Loughren,* 386 F.3d 88, 89 n. 1 (2d Cir. 2004) ("The constitutional right of access to the courts assures that prisoners, including pretrial detainees, have the tools they need in order to defend against criminal charges, attack their convictions and sentences (directly or collaterally), and bring civil rights claims challenging the conditions of their confinement.").

To state a claim for denial of access to the courts, the plaintiff is required to demonstrate that he suffered an actual injury as a result of the conduct of the defendants. *See Lewis*, 518 U.S. at 353. To establish an actual injury, the plaintiff must allege facts showing that the defendant took or was responsible for actions that hindered his efforts to pursue a legal claim, prejudiced one of his existing actions, or otherwise actually interfered with his access to the courts. *See Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997).

The plaintiff has alleged that, immediately after the body cavity search, he sought to contact ILAP, but an unidentified individual or unidentified individuals denied his request. He does not allege that he was unable to file a lawsuit or otherwise access the courts. Thus, he has not met the injury requirement of *Lewis*. The claim that on August 26, 2016, one of the defendants may have denied the plaintiff's request to contact ILAP fails to state a claim of denial

of access to courts and is dismissed.   *See* 28 U.S.C. § 1915A(b)(1).

**H.      Request for Transfer to Emergency Medical Unit**

The plaintiff alleges that as soon as Lieutenant Tosses finished the body cavity search, he asked to be transferred or transported to a "medical emergency unit."  The plaintiff claims that his request was denied.  He does not specify whether he directed his request to one or more of the defendants or whether any defendant denied the request.

To state a claim of deliberate indifference to medical needs, a pretrial detainee must satisfy a two-pronged test.  *See Darnell*, 849 F.3d at 30-32.  Under the objective prong, the detainee must demonstrate that the medical need was "sufficiently serious."  *See id.* at 30 ("the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health . . . which includes the risk of serious damage to physical and mental soundness") (internal quotation marks and citations omitted).  A "sufficiently serious" need is an urgent medical condition that is capable of causing death, degeneration, or extreme or chronic pain.  *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  Under the "*mens rea* prong or mental element prong" of the Fourteenth Amendment deliberate indifference to medical needs standard, "a pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."  *Darnell*, 849 F.3d at 32, 35 (internal quotation marks omitted).

The plaintiff alleges that when Lieutenant Tosses slammed him to the ground just prior to

the manual body cavity search, he broke a tooth. There are no allegations that the broken tooth caused the plaintiff to experience any pain or interfered with his daily activities or that the tooth would have degenerated into a serious condition if it were not treated immediately. *See Dabney v. Sawyer*, No. 9:11-CV-0273 (LEK/RFT), 2013 WL 5494074, at *10 (N.D.N.Y. Sept. 30, 2013) (noting that "a broken tooth may be considered sufficiently serious for purposes of stating a medical deliberate indifference claim ... where [for example] the broken tooth causes extreme pain, and there is a likelihood, that if left untreated, the condition of the tooth would degenerate or cause an inability to engage in normal activities"); *Mendoza v. McGinnis*, Civil Action No. 9:05-CV-1124 (TJM/DEP), 2008 WL 4239760, at *10 (N.D.N.Y. Sept. 11, 2008) (broken tooth did not constitute serious dental need in absence of allegations that tooth "caused [inmate] to experience extreme pain or the likelihood, that if left untreated, his broken [tooth] would have resulted in degeneration").

Although the plaintiff also claims that he has been impotent since he underwent the manual body cavity search on August 26, 2016, he does not indicate whether at the time he requested to be sent to a medical treatment unit, he suffered from impotency. Nor has he alleged facts to suggest that the condition was serious. *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (in determining whether a medical or dental condition is sufficiently serious, a court should consider the following "[f]actors . . . the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain") (internal quotation marks, brackets and citations omitted). The plaintiff describes no other injuries or harm that he suffered as a result of the search that required

immediate medical treatment.

Nor does the plaintiff allege that any defendant was or should have been aware of injuries that he sustained on August 26, 2016 and intentionally failed to facilitate his receipt of treatment in an emergency medical unit or "recklessly failed to act with reasonable care to mitigate the risk" that any injuries posed to him if he did not receive treatment. *Darnell*, 849 F.3d at 35. The court concludes that, the facts as alleged in the complaint, do not state a Fourteenth Amendment claim of deliberate indifference by any defendant to a serious medical need of the plaintiff. The claim regarding the plaintiff's request to be transferred or transported to an emergency medical unit after undergoing the manual body cavity search is dismissed without prejudice. *See* 28 U.S.C. § 1915A(b)(1).

## ORDERS

The court enters the following orders:

**(1)**    The claim for monetary damages against the defendants in their official capacities is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). All claims against Warden Santiago and Lieutenant Conger, the claim of a violation of the PREA, and the claim of denial of access to courts are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) and the Fourteenth Amendment deliberate indifference to medical needs claim is **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1). The Fourth Amendment search claim, the Fourteenth Amendment excessive force claims, and the Fourteenth Amendment sexual assault claim will proceed against Lieutenant Tosses and Correctional Officer Evans in their individual capacities.

The court will permit the plaintiff twenty (20) days to file an amended complaint to assert facts in support of his Fourteenth Amendment deliberate indifference claim related to his alleged

need for immediate treatment in an emergency medical unit after the manual body cavity search on August 26, 2016.  If the plaintiff chooses to file an amended complaint, he must include facts identifying the injury or injuries that he suffered as a result of the force used before and during the manual body cavity search, whether those injuries required immediate treatment, to whom he directed his request for treatment, any response that he received to his request for treatment, and the type or nature of medical, dental or mental health treatment that he received for his injuries. The court cautions the plaintiff that an amended complaint completely replaces the original complaint.  Thus, if the plaintiff chooses to file an amended complaint, he should also include the allegations from the complaint in support of the Fourth Amendment search claim, the Fourteenth Amendment excessive force claims, and the Fourteenth Amendment sexual assault claim that the court has already determined will be proceeding against Officer Evans and Lieutenant Tosses.

(2)     Within twenty-one (21) days of this Order, the Clerk shall verify the current work addresses of: Lieutenant Tosses and Correctional Officer Evans and mail a copy of the complaint, this order, and a waiver of service of process request packet to each defendant in his individual capacity at his confirmed address.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of each request.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)     Defendants Evans and Tosses shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and

waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include all additional defenses permitted by the Federal Rules.

(4)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

(5)     All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

(6)     The Clerk shall send a copy of the complaint and this order to the plaintiff and to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

(7)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. The plaintiff should also notify defendants or defense counsel of his new address.

SO ORDERED at Hartford, Connecticut this __16__ day of _April_, 2019.

/s/ MICHAEL P. SHEA_____
Michael P. Shea
United States District Judge

21