IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------x
:
DUSTIN GRANGER                    :           3:19 CV 60 (MPS)
:
v.                                :
:
ANTONIO SANTIAGO, et al           :           DATE: FEBRUARY 9, 2020
:
------------------------------------------------------x

RULING ON DISCOVERY DISPUTE (*See* Doc. No. 70)

I.     INTRODUCTION AND PROCEDURAL HISTORY

Pending before the Court is a discovery dispute in which the plaintiff, Dustin Granger, seeks an order compelling the defendants' expert witness, Lieutenant Eduardo Quijano ("Quijano"), to produce documents responsive to the demands made in his Rule 45 subpoena.[1] Specifically, the plaintiff is seeking: (1) "a copy of any curriculum, training or course materials, outlines, PowerPoints, scripts videos and/or documents developed, used or prepared by you or used by you and/or the Department of Correction (DOC) relating to or concerning the use of force and/or use of restraints, including, but not limited to, the materials that were used or shared on the following dates"[2] ("Demand No. 5"); and (2) "a copy of all communications with L.O.C.K.U.P. or Kevin Dillon and all curriculum from any and all training, course or instructor materials or

---

[1] The plaintiff served the subpoena on the defendants on December 8, 2020 pursuant to conducting Quijano's deposition on January 8, 2021. (Doc. No. 79, Ex. 1 at 1). On December 22, Quijano objected to the subpoena and produced certain documents. (Doc. No. 79, Ex. 1 at 5). On December 29, the plaintiff emailed defendants' counsel with respect to the limited production, asserting that the responses and objections therein were deficient.

[2] In Demand No. 5, the plaintiff includes a list of twenty-nine training courses—each of which were attended by some or all of the individually named defendant officers in this action—held on dates going back as far as February 17, 1999 up until April 27, 2016, on topics ranging from restraint techniques, use of force, searching techniques, contraband control, and searches conducted in correctional facilities. (Doc. No. 79, Ex. 1 at 4)

certificates, relating to any training, courses, certifications relating to the use of force and/or use of restraints, including but not limited to, the CT Triple Instructor Certification Handcuffing/OC Spray & Police Baton course you organized on or about October 5, 2020." ("Demand No. 6"). (Doc. No. 79, Ex. 1 at 3-5).

On January 12, 2021, each party briefed its position by way of a letter submitted to United States District Judge Michael P. Shea outlining the legal bases of the dispute. (*See* Doc. No. 70). On January 13, 2021, the Court (Shea, J.) referred the matter to the undersigned for resolution. (Doc. No. 71). On January 15, 2021, the undersigned scheduled a video discovery conference for January 20, 2021. (Doc. No. 72). After hearing argument from both sides, the Court confirmed that the defendant did not object to replying to Demand No. 6, but instead took issue with the broad scope of Demand No. 5.[3] The Court, therefore, instructed the plaintiff to revise Demand No. 5 and submit a more refined, specific request on or before January 22, 2021. The Court directed the defendants to reply to the amended requested by January 25, 2021. (Doc. No. 76). Both parties filed their submissions in accordance with the Court's order. (Doc. Nos. 74 and 75).

For the reasons detailed below, the plaintiff's request for an order directing the defendant to comply with discovery Demand No. 5, as modified in the January 21, 2021 submission is GRANTED. The defendant is directed to respond to the January 21, 2021 Demand No. 5 and the original Demand No. 6, on or before February 22, 2021.

II.   LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure states in relevant part:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering

---

[3] Although the defendants objected to both Demand Nos. 5 and 6 in their responses to the plaintiff's subpoena, their submissions to the Court addressed only Demand No. 5, referring to it as "[t]he request at issue." (Doc. No. 80 at 1). At the January 20, 2021 Discovery Conference, when asked by the Court the basis for his objection to Demand No. 6, defense counsel reiterated that it was Demand No. 5 that was the nucleus of the parties' dispute.

>the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1). The Court, however, whether by motion or on its own, must limit the extent of discovery if it determines that the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(i).

Rule 26(a)(2) establishes the requirements for expert witness disclosures and the contents of the written report that must accompany the disclosure of a witness retained to provide expert testimony. Specifically, the report must contain:

>(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

FED. R. CIV. P. 26(a)(2)(B).

Subject to the relevance requirements set forth in Rule 26(b), Rule 45 of the Federal Rules of Civil Procedure allows for a litigant to use a subpoena as a discovery device. *See A&R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, No. 3:07cv929 WWE, 2013 WL 6511934, *1 (D. Conn. Dec. 12, 2013). Specifically, Rule 45(c) may command a person "to attend a trial, hearing, or deposition" and, when so ordered by the issuing party, may command a person to bring with them "production of documents, electronically stored information, or tangible things . . . ." FED. R. CIV. P. 45(c). If, however, a subpoena imposes an "undue burden or expense on a person subject to the subpoena," the Court shall modify or quash it. *See In re Edelman*, 295 F. 3d 171, 178 (2d Cir. 2002). "Whether a subpoena imposes an undue burden depends upon such factors

as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden it imposed." *Travelers Indem. Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005).

III.   DISCUSSION

In their January 12, 2021 letter to the Court, the defendants maintained that Demand No. 5 sought materials that were not relevant to, and were beyond the scope of, Quijano's report and opinions, as those opinions related only to the "application of handcuffs, the range of motion of an individual in handcuffs, including the ability to perform a specific act, and refuting the opinion of Dr. Keller[4] that it was not possible for plaintiff to remove the contraband from his anal cavity in the manner described by the officers." (Doc. No. 80 at 1). Specifically, the defendants asserted that Quijano neither referenced nor relied on training materials related to the use of force, contraband control, searching techniques, or controlled strip searches in forming his opinions on the plaintiff's range of motion while handcuffed. (*Id.*).

Conversely, in his January 12, 2021 letter, the plaintiff relied on Quijano's own expert report to refute the defendants' contention that the requested documents were not relevant and were beyond the scope of his expert opinions. Notably, in his report, Quijano stated that his duties as Lieutenant include the roles of "Use of Force Training Coordinator and Pre-Service Training Coordinator." (Doc. No. 79, Ex. 2 at 2). As the Use of Force training Coordinator, Quijano would "oversee and prepare the curriculum for in-service and pre-service training of correctional staff on the use of force." (*Id.*). Similarly, as the Pre-Service Training Coordinator, Quijano would

---

[4] The plaintiff disclosed his expert witness, Dr. Jeffrey Keller, on September 11, 2020. Dr. Keller is expected to opine on the plaintiff's range of motion while handcuffed in the manner described by the defendant officers. (Doc. No. 80 at 1).

"coordinate the training schedule and calendar . . . [to] ensure that all curriculum is presented to correctional staff regarding all correctional training topics including . . . the use of force and the use of restraints." (*Id.*). Additionally, Quijano stated that he would "regularly teach and provide trainings to correctional staff" given his expertise as a "certified handcuffing instructor, having completed a three-day certification course through the L.O.C.K.U.P. Police Training program." (*Id.*).

The defendants asserted further that the overbroad nature of the request imposed an undue burden on Quijano because searching for the course materials at issue would require a significant time investment towards reviewing and collecting documents that were not relevant to his opinions. (Doc. No. 80 at 2). Plaintiff challenged that contention, citing to Quijano's own deposition testimony in which he stated that looking for the course materials would take "maybe 30 minutes, maybe 20 minutes." (Doc. No. 79, Ex. 3 at 8).

Finally, the defendants objected to Demand No. 5 insofar as it sought "proprietary or copyrighted materials, or materials that cannot be disclosed for safety and security." (Doc. No. 79, Ex. 1 at 5). Conversely, the plaintiff contended that any concerns regarding safety or copyrights can be assuaged by designating the course materials as "confidential," consistent with the Protective Order entered previously in this case. (Doc. No. 79).

At the conclusion of the January 20, 2021 discovery conference, the plaintiff's counsel stated that, as a potential compromise, he would narrow the scope of Demand No. 5 and seek only the course materials during the operative time period, instead of all course materials dating back to 1999. In his subsequently filed request, he outlined a limited timeframe for the materials he sought in Demand No. 5 to only those courses conducted after August 2013, the same period that the individually named defendants attended the trainings and when Quijano had been the Use of

Force and Pre-Service Training Coordinator. (Doc. No. 74). Specifically, the amended Demand No. 5 requests: "(1) the current or prior versions of the DOC course materials, curriculum and/or outlines concerning Use of Force (also referred to as Behavior Management within DOC) or the use of restraints in effect or used from August 2013 through present for the courses and/or trainings that Quijano personally (a) attended, ([b]) taught, and/or ([c]) is authorized to conduct on behalf of DOC, including, but not limited to, the following Use of Force or Behavior Management courses that one or more of the named Defendants attended . . . and (2) the print-out record of the DOC courses or trainings that Quijano personally attended, completed or taught from 2013 through present." (*Id.*). Unlike the previous draft of Demand No. 5, which included twenty-nine course dates, the amended version identified only ten courses and included the corresponding course identification number to assist in the search process. (Doc. No. 74).

The defendants do not object to providing the "print-out record of the DOC courses or training that Quijano personally attended, completed or taught from 2013 through the present," but do object to the first portion of the amended Demand No. 5 because it "would require Quijano to search, locate, and produce various current/former training materials on a broad topic, which he did not rely upon, are unrelated to his opinions, and relate to a topic he has not been offered as an expert on." (Doc. No. 75 at 1). Like the objections articulated in their prior submission to the Court, the defendants maintain that any request for training materials related to the use of force "is overly broad and burdensome, seeks irrelevant information, and constitutes a fishing expedition." (*Id.*).

The defendants' argument is not persuasive and fails to appreciate the full extent to which Quijano's expert opinions are predicated on his training. As stated in his own expert report, Quijano's background and qualifications include his roles as the "Use of Force Training Coordinator and Pre-Service Training Coordinator." (Doc. No. 79, Ex. 2 at 1). As such, Quijano's

experience and training with respect to his duties, the very basis of his expert qualifications, would certainly be relevant for discovery, particularly within the broad scope of Rule 26. *See Walls v. City of New York*, No. 19 Civ. 337 (RPK) (VMS), 2020 WL 6999996, *3 (E.D.N.Y. Nov. 24, 2020); *see also Wells Fargo Bank, N.A. v. Konover*, No. 3:05cv1924 (CFD) (WIG), 2009 WL 585434, *4 (D. Conn. March 4, 2009). Although the defendants attempt to limit the scope of Quijano's expertise to handcuffing, the training he relied upon to render his opinion also included, among other things, the use of force and behavior management. The defendants cannot simply cherry-pick the topics within Quijano's expertise that are subject to discovery when the duties implicit in his roles as a supervising lieutenant and instructor, and the training he underwent to obtain those roles, serve as the foundation for his expert report. *See Vellali v. Yale Univ.*, No. 3:16cv1345 (AWT), 2020 WL 5765380 *1 (D. Conn. Sept. 28, 2020) ("[F]acts or data [is] to be interpreted broadly to require disclosure of any material considered by the expert, from whatever source. . . . The disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert.")

Demand No. 5, as modified by the plaintiff's January 21, 2021 submission, is reasonably limited insofar as it requests only those materials concerning the use of force and behavior management courses attended by Quijano and the individual defendants, as well as those taught by Quijano. (Doc. No. 74). Additionally, the breadth of the modified Demand No. 5 is reasonably limited to the operative three-year period for courses conducted after August 2013. (*Id.*). To the extent that the defendants proffer any evidence suggesting that Quijano would be overburdened by searching for the course materials at issue, their argument is belied by Quijano's own deposition testimony. (*See* Doc. No. 79, Ex. 3 at 8). *See Guadalupe v. City of New York*, No. 15 Civ. 0220 (CM) (JCF), 2016 WL 3570545, *2 (S.D.N.Y. June 24, 2016) ("[A] party seeking to avoid

discovery on grounds of burden at least has the obligation to address those proportionality factors pertinent to that case and provide specific evidence and argument about them to the extent possible; it is not enough merely to invoke the work 'burden' as a talisman."). Applying the proportionality factors here, the burden of producing the proposed discovery does not outweigh its likely benefit. *See, e.g. Hussey v. State Farm Lloyds Ins. Co.,* 216 F.R.D. 591, 596 (E.D. Tex. 2003) ("The court is required to balance the competing interests of allowing discovery and protecting the parties and deponents from undue burdens.")

Accordingly, as set forth above, Quijano is directed to produce the materials requested in Demand No. 5, as amended by the plaintiff's January 21, 2021 submission, as well as the materials requested in Demand No. 6, as written in the plaintiff's December 8, 2020 subpoena.

III.   CONCLUSION

For the reasons set forth above, the plaintiff's request for an order directing the defendant to comply with discovery Demand No. 5, as modified in the January 21, 2021 submission, is GRANTED. The defendant is directed to respond to the January 21, 2021 Demand No. 5 and the original Demand No. 6 on or before February 23, 2021.

This is not a Recommended Ruling. This Ruling is reviewable pursuant to the "clearly erroneous" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon timely made objection.

Dated at New Haven, Connecticut, this 9th day of February, 2021.

                                        __/s/ Robert M. Spector_____
                                        Robert M. Spector
                                        United States Magistrate Judge